**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CORINNE DONLEY, | |
| Plaintiff, | |
| v. | Case No. 20 C 2710 |
| | Judge Sunil R. Harjani |
| DENIS McDONOUGH, Secretary of Veterans Affairs, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Corinne Donley filed this lawsuit against her former employer, the Department of Veterans Affairs ("VA"), under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., for failing to accommodate her disability and retaliating against her for engaging in protected activity.[1] Defendant moves for summary judgment. For the reasons stated below, the motion [34] is granted in part and denied in part and the related motions to strike [49, 50] are denied.

**FACTUAL BACKGROUND[2]**

Donley is disabled due to sarcoidosis, which compromises her breathing because of nodules in her lungs. Doc. 43, PRDSOF ¶ 3; Doc. 46, DRPSOAF ¶ 15.[3] Donley was hired in 2008

---

[1] In her response memorandum, Donley withdrew her claims for age discrimination (Count III), sex discrimination (Count IV), and violation of the Family and Medical Leave Act (Count V). Doc. 44 at 5, n.2. These Counts are dismissed. Donley also withdrew her claim that she was subjected to a hostile work environment based on disability. The claim for hostile work environment based on disability in Count I is dismissed.

[2] The Court has taken the facts from the parties' Local Rule 56.1 statements. They are undisputed unless otherwise noted.

[3] The Court cites to Defendant's LR 56.1 statement of facts as "DSOF," Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF," Plaintiff's Statement of Additional Facts as "PSOAF," and Defendant's response to Plaintiff's statement of additional fact as "DRPSOAF."

as a social worker at the Jesse Brown VA Medical Center and promoted in May 2016 to supervisory social worker. Doc. 43, PRDSOF ¶¶ 5, 6. Donley's duties as a supervisory social worker included visiting the clinics, visiting the staff, and responding to customers. *Id*. at ¶ 8. In November 2016, Donley was required to testify as part of an administrative investigation that was being conducted into allegations of harassment and discrimination in her department. *Id*. at ¶ 9. At the hearing, Donley testified about actions by Chief of Social Work Luz Hein. *Id*. at ¶ 10. Hein left the VA in 2017. *Id*. at ¶ 12. Matthew Hunnicutt was eventually promoted to Chief of Social Work and officially became Donley's supervisor as of October 1, 2017. *Id*. at ¶ 13.

On September 11, 2017, Donley submitted an accommodation request, asking to work closer to home or from home, to work only one day per week at the Jesse Brown medical center instead of five, and to work four 10-hour days per week instead of five 8-hour days. Doc. 43, PRDSOF ¶ 14. Donley requested an accommodation in part because her arthritis "made it difficult to get out of the car and walk into the medical center." *Id*; Ex. B (Donley Dep.) at 34:1-2. At that time, she was also experiencing compromised breathing, she had severe osteoarthritis in the left knee, she had a cyst in her right knee, sitting in the car for two hours was making her conditions worsen, and she was unable to get adequate rest. Doc. 46, DRPSOAF ¶ 16.

About two weeks later, on September 26, 2017, Hunnicutt approved Donley's request to work four 10-hour days at the Jesse Brown medical center and offered her the additional accommodation of working in an office closer to the parking garage. Doc. 43, PRDSOF ¶ 20. In Hunnicutt's view, Donley needed to be full-time on-site at the Jesse Brown medical center. *Id*. at ¶ 17. Hunnicutt's written response explained that Donley's presence at the Jesse Brown medical center was necessary due to her position as social work supervisor over "multiple crisis-related programs." Doc. 36, Ex. G. His determination further explained that Donley was "responsible for

units that serve very vulnerable Veterans in a variety of specialized programs, including Veterans' Justice Outreach, Grant and Per-Diem, Homeless Veterans' Walk-in Clinic, H-PACT Clinic, etc." and that social workers and support staff in those programs "require on-site supervision in order to provide optimum patient care." *Id*. The determination further stated that the social work supervisor was "expected to be present at the medical center to communicate effectively and in person with staff." *Id*. Donley disputes that Hunnicutt's representation of her duties is accurate, asserting that she did not supervise any crisis teams, supervision of teams could be handled remotely, and her full-time presence on site at the Jesse Brown campus was not necessary for her to perform her duties. Doc. 43, PSOAF ¶¶ 21, 24.

The parties also dispute whether Donley met her workplace performance expectations during the time she reported to Hunnicutt. Doc. 43, PRDSOF ¶¶ 39-43, 46-53, 55, 58-62. Effective August 27, 2018, Hunnicutt reassigned Donley from Supervisory Social Worker, Non-HUD-VASH Programs, to Social Worker, Homeless Program Walk-In Clinic, which took away Donley's supervisory duties and assigned her to the Walk-In Clinic. Doc. 46, DRPSOAF ¶ 24. Hunnicutt wrote that the action was being taken pending the outcome of an investigation into allegations of a hostile work environment. Doc. 43, Ex. 32. The next day, on August 28, 2018, Hunnicutt issued a midterm progress review of Donley's performance, finding she "needs improvement to be fully successful or better." Doc. 36, Ex. W; Doc. 46, DRPSOAF ¶ 26. Progress reviews normally occur in March or April of the rating year. Doc. 46, DRPSOAF ¶ 25.

On September 7, 2018, Hunnicutt sent a "Disciplinary Action Request" to Human Resources. Doc. 46, DRPSOAF ¶ 28. In the request, Hunnicutt indicated that on December 1, 2017, January 2, 2018, February 6, 2018, and August 14, 2018, Donley committed the offense of "Deliberate Failure/Unreasonable Delay in carrying out instructions; Refusal to carry out order

from supervisor." *Id*. Hunnicutt also accused Donley of abusing patients on June 22, 2018, and August 29, 2018. *Id*. Hunnicutt further accused Donley of reprisal against an employee, Carmen Ramirez, on unspecified dates. *Id*. Finally, Hunnicutt asserted that on May 4, 2018, Donley used disrespectful, insulting, and obscene language about a supervisor. *Id*. In November 2018, Hunnicutt rated Donley's performance as "unacceptable." Doc. 36, Ex. W; Doc. 43, PRDSOF ¶ 55. This was the first time Donley had received an unsatisfactory rating from the VA. Doc. 43, PRDSOF ¶ 55.

Donley submitted another accommodation request on December 3, 2018, asking to be assigned to a worksite closer to her home, because her long commute ("46 miles each way") exacerbated her disability and caused her to be in pain by the time she arrived at work. Doc. 43, PRDSOF ¶ 25. In response, Hunnicutt approved an interim accommodation on December 18, 2018, allowing Donley "to work out of the Auburn-Gresham CBOC" ("Community Based Outpatient Clinic") (closer to her home) effective immediately. *Id*. at ¶ 26. Hunnicutt asked Donley to submit a completed form signed by her doctor by December 26, which would allow the VA to make a final determination on her accommodation request. *Id*. at ¶ 28. Hunnicutt claimed that Donley's interim accommodation reverted back to her 2017 accommodations (4/10 schedule at Jesse Brown with office space closer to the parking) because she did not return the VA 0857e form with the additional medical documentation. Doc. 36, DSOF ¶ 29. Doc. 46, DRPSOAF ¶ 29. Donley did return the requested additional medical documentation (VA form 0857e) on December 26, 2018. Doc. 43, Ex. 37; Doc. 46, DRPSOAF ¶ 29.

Donley initiated contact with an EEO counselor on February 8, 2019. Doc. 43, PRDSOF ¶ 72. Five days later, on February 13, 2019, Hunnicutt issued a proposal to demote Donley. *Id*. at ¶ 60. Just under a month after the proposal to demote, Donley filed an EEO complaint alleging

discrimination and retaliation. *Id.* at ¶ 72. Donley was then demoted from supervisory social worker to social worker on April 12, 2019. *Id.* at ¶ 62. In demoting Donley, the director of the Jesse Brown medical center found that substantial evidence supported the charges against Donley: inappropriate behavior, careless performance of duties, failure to attend a meeting, and conducting unbecoming of a federal employee. *Id.* VA guidelines state that when an employee is not fully successful in a critical element of a position, "the supervisor must afford the employee a reasonable opportunity to improve by placing the employee on a PIP before the employee can be removed from the position involuntarily through a reduction in grade/pay or removal from Federal service." Doc. 46, DRPSOAF ¶ 35. Hunnicutt did not put Donley on a performance improvement plan ("PIP") before demoting her. *Id.*

Following her April 2019 demotion, Donley was assigned to the "grant and per diem" ("GPD") Liaison position, reporting to Regina Freeman-Hodges. Doc. 43, PRDSOF ¶ 65; Doc. 46, DRPSOAF ¶ 36. Donley told Hunnicutt and Freeman-Hodges that she was unable to perform her new GPD Liaison duties because of her disability. *Id*; Doc. 43, PRDSOF ¶ 66. They assigned her those duties anyway without engaging in the interactive process or providing an accommodation. Doc. 46, DRPSOAF ¶¶ 36, 38. Donley continued to raise issues relating to her physical limitations and potential accommodations with Freeman-Hodges and Dr. Brenda Burke, the Associate Director of Patient Care. *Id.* at ¶ 37. In response, Freeman-Hodges told Donley that she could be fired if she filed a formal request for an accommodation. *Id.* at ¶ 38. Christopher Glover, the Local Reasonable Accommodation Coordinator, also indicated to Donley that she could be fired for asking for an accommodation. *Id.*

In September 2019, Donley asked if she could work at the VA's Auburn-Gresham clinic on Tuesdays because she believed there was an open office there on Tuesdays. Doc. 43, PRDSOF

¶ 67.  Freeman-Hodges denied the request because another employee had already been identified for that space.  *Id.*  In 2020, Donley left the VA and now works for the Department of Housing and Urban Development. Doc. 43, PRDSOF ¶ 3; Doc. 46, DRPSOAF ¶ 39.

## ANALYSIS

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." *Id.* at 255.

### A. Motions to Strike

The Court first addresses the parties' motions to strike.  The VA raises instances in which Donley failed to comply with Local Rule 56.1 by: (1) violating LR 56.1(d)(1)'s requirement that LR 56.1(b)(3) statements of additional fact be "concise"; (2) inserting legal arguments in a LR 56.1(b)(2) response, instead of in a memorandum; and (3) in her memorandum, improperly citing her LR 56.1(b)(2) response instead of her LR 56.1(b)(3) statement for new facts.  The VA first objects to ¶¶ 1-8, 10-16, 18-19, 22, 27-29, 36, and 38 of Donley's Local Rule 56.1(b)(3) statement of additional facts because the paragraphs contain four or more sentences in violation of Local Rule 56.1's requirement of "concise" numbered paragraphs.  The Court agrees that some of the paragraphs are too long and contain too many facts, but the Court has discretion whether to accept the statements despite the violation. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[T]he decision whether to apply the [local] rule[s] strictly or to overlook any transgression is one left to the district court's discretion.") (internal quotes and citation omitted).  In this case, the better course

is to reach the merits on Donley's claims and the Court accepts the facts contained in the statements that are supported by competent evidence.

The VA next objects that Donley's Local Rule 56.1(b)(2) response to its statement of material facts contains legal argument in ¶¶ 15, 18, 30, 33, 35, 40-41, 43, 48, 50-51, 53, 56-57, and 73-75, which should have been included in Donley's response memorandum pursuant to Local Rule 56.1(e)(2). A Local Rule 56.1(b)(2) response "may not assert legal arguments except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support." LR 56.1(e)(e)(2). To the extent the Court agreed with the VA, it did not consider any improper argument in the Local Rule 56.1(b)(2) response. Rather than strike any responses to statements of fact, the Court exercises its discretion to disregard the portion of any factual statement that contains legal arguments. *Schmelzer v. Animal Wellness Ctr. of Monee, LLC*, 2022 WL 3026911, at *3 (N.D. Ill. Aug. 1, 2022). Striking any noncompliant paragraphs "would in some cases throw out a properly supported assertion along with a legal argument or conclusion." *Id*.

The VA also takes issue with Donley's response memorandum, arguing Donley impermissibly cites her Local Rule 56.1(b)(2) response rather than her Local Rule 56.1(b)(3) statement of additional facts when she relies on additional facts. The VA contends that this approach prevents it from adequately responding to the facts Donley cites in her Local Rule 56.1(b)(2) response. The VA asks the Court to disregard improper citations to Donley's LR 56.1(b)(2) response found on pages 1-2, 6-8, and 12-15 of her response memorandum. In its discretion, the Court declines to strike Donley's citations to her Local Rule 56.1(b)(2) response. Rather, the Court disregards any new facts not found in a paragraph of the VA's Local Rule 56.1(a)(2) statement of facts or Donley's Local Rule 56.1(b)(3) statement of additional facts *Eason*

*v. Nolan*, 416 F. App'x 569 (7th Cir. 2011); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005).

In her motion to strike certain of the VA's statements of fact, Donley contests the relevance of facts, complains that statements rely on testimony unsupported by personal knowledge, makes hearsay objections, and argues that a statement contains a legal conclusion. "It is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the record offered in support of the statement." *Hartford Fire Ins., Co. v. Henry Bros. Construction Management Services, LLC*, 2014 WL 4269057, at *1 n.1 (N.D. Ill. Aug. 28, 2014). Similarly, "[t]he Court is capable of disregarding statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, or contain unfounded, irrelevant, or unsupported assertions of fact." *Oxford Bank & Trust and Fifth Ave. Property Management v. Village of La Grange*, 879 F.Supp.2d 954, 960 (N.D. Ill. 2012). Thus, rather than strike any inappropriate portions of the VA's statements of fact, the Court only considers the relevant, admissible, and supported facts presented by the VA's Local Rule 56.1 statement of facts. *Hartford Fire Ins., Co.*, 2014 WL 4269057, at *1 n.1.

For these reasons, both motions to strike are denied.

**B. Failure to Accommodate Claim Based on 2017 Accommodation Request**

In its opening briefing, VA argues that it is entitled to summary judgment on Donley's 2017 accommodation request because Donley failed to exhaust her administrative remedies before suing under the Rehabilitation Act and the accommodation the VA offered her (working a four-day workweek and giving her an office closer to the parking garage) was reasonable. Doc. 35 at 2-3. In response, Donley fails to address the failure to accommodate based on her September 2017

accommodation request. She thus waives the argument. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). In any event, the Court agrees there is no evidence that Donley exhausted her administrative remedies by contacting an Equal Employment Opportunity counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)). The 45-day deadline functions as a statute of limitations. *Id*. The VA argues that the forty-five day period began to run in September 2017, when Donley received Hunnicutt's decision on her accommodation request. It is undisputed that Donley did not initiate contact with an EEO counselor until February 2019. Doc. 43, PRDSOF ¶¶ 20, 72. Accordingly, any claim based on the VA's response to Donley's September 2017 accommodation request is time-barred.

## C. Failure to Accommodate Claim Based on 2018 Accommodation Request

Donley challenges the VA's failure to reasonably accommodate her disabilities in response to her December 2018 accommodation request asking to be assigned to a worksite closer to her home. To succeed on her failure to accommodate claim under the Rehabilitation Act, Donley must prove: (1) she is a qualified individual with a disability; (2) the VA was aware of her disability; and (3) the VA failed to reasonably accommodate her disability. *Smithson v. Austin*, 86 F.4th 815, 820 (7th Cir. 2023).

The VA's only remaining argument is that Donley was not a qualified individual for the supervisory social worker job because she was unable to perform the essential functions of her position without being present at the Jesse Brown medical center on a full-time basis.[4] Donley

---

[4] The VA originally argued in support of summary judgment that an employer is not required to accommodate issues relating to an employee's commute. Doc. 35 at 4; Doc. 45 at 5-6. After the Seventh

counters that she was capable of effectively managing her employees without being at their worksite every day. Whether a particular job function is essential is a question of fact, not law. *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020). The plaintiff bears the initial burden of demonstrating that she was a qualified individual who could perform the essential functions of her position. *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565, 570 (7th Cir. 2019). To determine if an employee is a qualified individual, courts "first consider whether the individual satisfies the prerequisites for the position and then turn to the question of whether the individual can perform the essential functions of the job with or without reasonable accommodation." *Smithson*, 86 F.4th at 820. Within this analysis, courts must consider whether a particular duty is an essential function of the job. *Id.* This inquiry involves consideration of many factors including "the employer's judgment, the employee's written job description, the amount of time the employee spends performing that function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers." *Id.*

The employer's opinion about whether a function is essential is considered, but not given complete deference. *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 644 (7th Cir. 2023); *Smithson*, 86 F.4th at 820 (employer's view is important but not determinative and courts "look to evidence of the employer's actual practices in the workplace."). Regarding physical presence at the workplace, the Seventh Circuit has "repeatedly held that an employer may require attendance at

---

Circuit's decision in *EEOC v. Charter Communications, LLC*, 75 F.4th 729 (7th Cir. 2023), the VA concedes that "an employer *might* be required to do so, depending on the circumstances." Doc. 62 at 1. Moreover, in its reply brief, the VA argues for the first time that Donley cannot recover even if she could have performed the essential functions of her job remotely at a CBOC because it acted in good faith by working with her to search for an acceptable accommodation and Donley is the one that caused a breakdown in the interactive process. Doc. 45 at 9. Because the VA raises this argument for the first time in its reply, it has waived any argument as to the breakdown of the interactive process. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("arguments raised for the first time in [a] reply brief are waived because they leave no chance to respond.").

the job site as an essential requirement of the job." *Smithson*, 86 F.4th at 820.   That said, "[d]etermining whether a specific job has essential functions that require in-person work" is a case-specific inquiry." *Kinney*, 76 F.3d at 644.

Applying the above factors, the evidence demonstrates a genuine dispute of material fact exists as to whether physical presence at the Jesse Brown medical center four 10-hour days a week is an essential function of the VA's supervisory social worker position.   Turning to the first factor, the "employer's judgment," the evidence weighs in favor of denying summary judgment.   The VA argues that in Hunnicutt's view, Donley needed to be full-time on-site at the Jesse Brown medical center so that her staff could have access to "what she could offer as a supervisor," be it guidance, signatures, interfacing with the chief of social work, or "stepping in and helping out, which supervisors are often required to do." Doc. 36, DSOF ¶ 17; Def's Ex. G.   But the VA also asserts that Hunnicutt removed the interim accommodation of Donely working offsite at the Auburn-Gresham CBOC because Donely did not return the requested medical documentation (VA Form 0857e) by December 26, 2018. Doc. 35 at 4; Doc. 36, DSOF ¶ 29.   Yet, it is undisputed that Donley did return the required form to the VA on December 26, 2018. Doc. 43, Ex. 37; Doc. 46, DRPSOAF ¶ 29.   Moreover, the VA offered Hunnicutt's July 23, 2019 email to Freeman-Hodges stating that Donley's interim accommodation "didn't pan out due to lack of available space as well as the fact that [Donley] didn't provide the additional medical documentation as stated on the form."   Notably, Hunnicutt did not state Donley was unable to perform the essential functions of her job at the Auburn-Gresham CBOC site. Doc. 36, DSOF ¶ 29; Doc. 36, Ex. K.

Hunnicutt's view is not corroborated by other evidence offered by the VA.   The "Accommodation Request Determination" form denying Donley's 2018 accommodation request to be assigned to a workstation closer to her home does not indicate that working at the Jesse

Brown campus four days of the workweek was an essential function of Donley's job. Of note, Hunnicutt did not check the box which stated that the request was denied because: "the accommodation would require removal of an essential function of the job." Doc. 36, Ex. Q. The VA's position is also undercut by Hunnicutt's January 24, 2019 email to the manager of the Auburn-Gresham clinic which stated that he "had been informed that the Agency is obligated by law to provide office space at Auburn-Gresham for an employee due to a reasonable accommodations situation." Doc. 36, Ex. N. This evidence suggests that the VA decided being physically present at the Jesse Brown campus four 10-hour days of the workweek is not an essential function of Donley's job and thus, Hunnicutt's understanding of the essential functions of the job is incorrect. Arguably, if Donley lacked the ability to perform the essential functions of her job at the Auburn-Gresham clinic, the reasonable inference is Hunnicutt would not have stated that the VA was obligated by law to provide office space at Auburn-Gresham for Donley. Finally, the evidence suggests that the VA's denials of Donley's requests to work closer to home were based on the incorrect belief that the VA never has to accommodate a disability relating to an employee's commute.[5] Thus, the VA's own evidence shows the existence of a material fact about whether working full-time at the Jesse Brown campus was an essential function of the supervisory social worker position.

The experiences of past and current workers further raise a genuine issue of material fact as to whether Donley could perform the essential functions of her job without being present at the

---

[5] *See* Doc. 36, DSOF ¶ 30 ("Glover repeatedly told Hunnicutt that the VA was not obligated to accommodate a problem relating to an employee's long commute."); Doc. 36, Ex. O (Glover January 29, 2019 email to Hunnicutt) ("As a reminder[,] during the Reasonable Accommodation Interactive Process Meeting we discussed **the agency is not obligated to accommodate commute to work (this is what the Employee's Healthcare Provider is suggesting.**")) (emphasis in original). As the VA concedes, "an employer *might* be required" to accommodate issues relating to an employee's commute, "depending on the circumstances." Doc. 62 at 1.

Jesse Brown medical center on a full-time basis. In this regard, the VA admits that during the pandemic, two supervisors in the homeless program alternated days working in-person. Doc. 36, DSOF ¶ 18. Another employee, Kevin Foss who supervised approximately 25 people was allowed to work from Jesse Brown every day because he lived 20 minutes away rather than commute to a CBOC in Indiana where five of his supervisees worked. Doc. 43, PRDSOAF ¶¶70-71. During his deposition, Hunnicutt conceded that Foss supervised the employees who were located at a different site by meeting with them in person every two months and otherwise generally meeting on the phone. Doc. 36, Ex. F (Hunnicutt Dep.) at 59:19-60:14. Social work supervisors Tracy Emmaneul and Mary Gollings were also occasionally allowed to work from home while they were pregnant. Doc. 46, DRPSOAF¶ 18. Regarding Emmaneul and Gollings, the VA responds that their accommodations were temporary, and Donley sought a permanent accommodation. The Court agrees that the fact that other employees were given temporary pregnancy accommodations does not change the essential nature of in-person work for the job overall. Nonetheless, Donley's other evidence creates a valid dispute as to whether all employees in the supervisory social worker position were required to work full-time in person with their supervisees. *Bilinsky*, 928 F.3d at 570 (courts "look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions."). This factor clearly weighs against summary judgment.

The summary judgment record contains very little evidence about the remaining factors. Donley submitted a written Functional Statement (job description) for the supervisory social worker position, but neither party offered an argument on this point. Doc. 43, Ex. 13. The Court finds this factor is neutral. Likewise, the evidence is unclear as to the amount of time spent performing in-person supervisory social worker duties. The Seventh Circuit has held that a

function "need not encompass the majority of an employee's time, or even a significant quantity of time, to be considered essential." *Basith v. Cook Cty.*, 241 F.3d 919, 929 (7th Cir. 2001). Favoring the VA, Hunnicutt testified that the supervisory social worker job required Donley to meet with people in person "[e]very day of the week she's on-site." Doc. 36, DSOF ¶ 8. By contrast, Donley explained that the amount of time she spent on tasks that required her in-person presence was limited: "I met with people in person a couple of times a week but could have spoken to them over the phone or using video teleconference just as easily, which I often did." Doc. 43, Ex. 1 (Donley Aff.) at ¶ 12. In the context of a summary judgment motion, this factor slightly favors Donley because at this stage the Court is required to view the evidence in the light most favorable to her, not the VA.

The record is also not well-developed as to the impact of not requiring Donley to be physically present at the Jesse Brown medical center four 10-hour days of the workweek. Donley explains that there would be no adverse consequence if she did not work full-time at the Jesse Brown medical center. Doc. 43, Ex. 1 (Donley Aff.) at ¶ 40 ("I know supervisors can manage their employees without being at their worksite every day. We have three supervisors in the homeless program so there was plenty of coverage."). On this issue, Hunnicutt testified "when you give up having a supervisor on site for a full day, some other supervisor has to cover for that supervisor. So it's not the best way." Doc. 36, Ex. F (Hunnicutt Dep.) at 48:5-8. Beyond this vague and conclusory statement, the VA does not explain the consequences to its veteran-support programs of not requiring Donley to perform her supervisory social worker duties in person. The VA also offers no undisputed facts of the actual burden on the operation of the veteran-support programs. Without proof regarding the negative consequences, the VA has pointed to no undisputed facts to suggest that the consequences of not requiring Donley to be present at the Jesse Brown medical

center four 10-hour days of the workweek is a factor that weighs in its favor and should preclude a jury trial. Consequently, the evidence of the amount of time spent on meetings that required in-person presence and the consequences of not requiring Donley to work full-time at Jesse Brown do not point decisively to full-time attendance at the Jesse Brown medical center as an essential function of Donley's job.

In sum, a majority of the factors weigh in favor of denying summary judgment. Considering all of the factors together, the Court concludes that a reasonably jury, construing all facts and drawing all reasonable inferences in favor of Donley, could conclude that being present at the Jesse Brown medical center four 10-hours days of the workweek is not an essential function of the supervisory social worker job. Accordingly, the VA's motion for summary judgment is denied as to Donley's claim for failure to accommodate based on her 2018 accommodation request.

### D. Failure to Accommodate Claim Based on 2019 Request and Interference Claim

The VA next argues that Donley failed to exhaust her administrative remedies regarding her claims that the VA: (1) refused to accommodate her disabilities after her demotion in April 2019 and (2) interfered with her Rehabilitation Act rights by threatening to fire her when she continued to ask for an accommodation after her April 2019 demotion. "To bring a lawsuit under the Rehabilitation Act, plaintiffs must exhaust administrative remedies and cannot bring claims in the lawsuit not in the original EEOC charge." *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022). "To include a discrimination claim in a federal district court complaint that was not brought in the charges filed with the EEOC a plaintiff must pass the two prong test []: (1) the claim is like or reasonably related to the charges, and (2) the claim in the complaint reasonably could develop from the investigation into the original charges." *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir. 1995). As to the first prong, "[t]he claims are not alike or reasonably related unless there is a

factual relationship between them. This means that the charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins., Co.,* 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original).

It is uncontested that the EEO complaint did not include any claim relating to the VA's failure to accommodate Donley after her April 12, 2019 demotion to the GPD Liaison position, as that event had not yet occurred at the time the EEO complaint was filed on March 11, 2019. The issue, therefore, is whether the VA's post-April 12, 2019 failure to accommodate is a claim that is "like or reasonably related" to the EEO complaint. Donley argues that she exhausted her administrative remedies as to her 2019 accommodation request because she provided an affidavit to the EEO investigator during the investigation which informed the investigator that the VA failed to accommodate her following her April 2019 demotion. The Court agrees.

"Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502 ("[I]n assessing the scope of the EEOC charge, we may consider her statements in a sworn affidavit that she filed in support of the charge."); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110–11 (7th Cir. 1992) (plaintiff's EEOC affidavit contained "explicit reference" to the discriminatory denial of promotion claim alleged in complaint). Regarding her failure to accommodate claim based on her 2019 accommodation request, Donley's EEO affidavit stated that: her recent request for an accommodation was not approved; no alternative accommodation was offered other than the accommodation provided in 2017; she was expected to perform the duties of the GPD Liaison position which included working in the field and inspecting veterans in their apartments; she cannot perform this duty because of her impairments; and she was told by her supervisor (Freeman-Hodges) that could be terminated if she continued to request a reasonable accommodation. Doc.

43-4 at ¶¶ 22-24. These allegations in the EEO affidavit describe the same conduct and implicate the same individual as the claim relating to her 2019 accommodation request in her Complaint. Thus, any claim relating to Donley's 2019 accommodation request is like or reasonably related to the claim outlined in her EEO complaint and affidavit.

While "[t]he second part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation," *Cheek*, 31 F.3d at 500, the Court concludes that the claim relating to Donley's 2019 accommodation request can reasonably be expected to grow out of an EEO investigation into the allegations in Donley's affidavit. With the above information about the VA's post-April 12, 2019 failure to accommodate Donley in connection with the GPD Liaison position, a reasonable EEO investigation into the complaint Donley filed before her demotion could have led to an investigation of conduct alleged to have taken place after her demotion. Consequently, Donley has properly exhausted her administrative remedies as to her failure to accommodate claim based on her 2019 accommodation request. The VA's motion for summary judgment is denied as to this claim.

The same rationale applies to Donley's interference claim based on Freeman-Hodges' statement that Donley could be terminated if she continued to seek accommodations for her disabilities after her demotion in April 2019. Therefore, Donley's claim for interference under the Rehabilitation Act is exhausted and also survives summary judgment.

### E. Retaliation

The Court turns to Donley's retaliation claim. Donley's response memorandum presents two theories of retaliation under the Rehabilitation Act. Donley first argues that the VA demoted her in April 2019 in violation of the Rehabilitation Act, in response to: (1) her testimony in the internal investigation into allegations of harassment and discrimination in her department by chief

of social work Hein and (2) her September 2017 accommodation request.[6]  To establish a Rehabilitation Act retaliation claim, Donley must show that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action." *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022). A plaintiff may offer circumstantial evidence of intentional retaliation, "including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* (internal quotes and citation omitted).

Donley's first theory fails because she cannot establish causation.[7]  As to causation, Donley's only argument is that suspicious timing of certain undisputed events supports an inference of retaliatory intent. Doc. 44 at 11-13.  "A plaintiff may create a triable causation issue by demonstrating that an adverse employment action followed close on the heels of h[er] protected speech." *Kingman v. Frederickson*, 40 F.4th 597, 603 (7th Cir. 2022) (internal quotes and citation omitted).  At the same time, "[w]hen a plaintiff relies solely on a suspicious timing argument [] the time period between the protected activity and the adverse action must be very close—typically a period of days, not weeks or months." *Id.* (internal quotes and citation omitted); *see McClendon v. Ind. Sugars Inc.,* 108 F.3d 789, 796–97 (7th Cir. 1997) (holding that a 2-3 day time period between the employee's complaint and his termination was sufficient).  Further, a "short gap may

---

[6] It is not clear, and Donley does not explain, why Hunnicutt would retaliate against her because of her testimony against Hein.  As the VA explains, Donley's testimony supposedly resulted in Hein's firing, which opened the door for Hunnicutt to replace Hein as chief of social work.

[7] The Court does not need to reach whether Donley engaged in protected expression when she testified as part of the internal administrative investigation.  Moreover, Donley participated in a protected act when she requested an accommodation for a disability. *Cassimy v. Board of Educ. of Rockford Public Schools, Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006).

permit a plaintiff to survive summary judgment only if there is also other evidence that supports the inference of a causal link." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal quotes and citation omitted).

For purposes of analyzing the time period, Donley's testimony against Hein occurred in November 2016 and Donley requested a reasonable accommodation on September 11, 2017. According to Donley, the relevant date for measuring the gap is October 1, 2017 because it was not until then that Hunnicutt officially became her supervisor and had the authority or opportunity to retaliate against her. Donley first points out that a little over a month later in November 2017, Hunnicutt began retaliating against her when he told his supervisor (Mary Toles) that he needed a "better fit" for his department than Donley. Regardless of the timing, this comment, by itself, does not rise to the level of retaliation which requires an adverse action. In the retaliation context, an employment action is adverse if it "well might have dissuaded a reasonable worker" from engaging in protected conduct. *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). It is undisputed that Hunnicutt's comment came in response to Donley expressing interest in a "Veterans Justice Outreach" position in northwest Indiana. Doc. 43, PRDSOF ¶ 44. Hunnicutt was merely supporting Donley's proposal. He wrote to Toles that he hoped Donley could get that position and that Donley's supervisory position could be filled by someone who would be a "better fit." *Id*. In this context, nothing about the comment would appear to dissuade a reasonable worker from engaging in further protected activity.

Donley next lists several additional events that she claims were based on retaliatory animus: (1) at some point before August 2018, Hunnicutt solicited negative reports of contact from a few of Donley's subordinates; (2) during the summer of 2018, Donley requested alternative dispute resolution but Hunnicutt denied her request; (3) Hunnicutt failed to follow Agency policy

19

for evaluating her performance by delaying issuing a midterm evaluation for Donley from March or April, 2018 until August 28, 2018 and not putting her on a PIP before demoting her; (4) on September 7, 2018, Hunnicutt sent a "Disciplinary Action Request" to Human Resources; (5) on November 2, 2018, Hunnicutt gave Donley her first unsatisfactory performance review since she began working for the VA; (6) on February 13, 2019, Hunnicutt issued a proposal to demote Donley which included only one of the reasons listed in the September 7, 2018 "Disciplinary Action Request"; and (7) on April 12, 2019, Donley was demoted from supervisory social worker to social worker. As to the first incident, it is Donley's burden to establish causation. *Adebiyi v. South Suburban College*, 98 F.4th 886, 898 (7th Cir. 2024). Because the timing of Hunnicutt's solicitation of negative reports of contacts is unclear, Donley cannot avail herself of the causal inference created by suspicious timing. As a result, the Court finds Hunnicutt's solicitation of negative reports of contact does not support Donley's claim of causation through temporal proximity.

As to the remaining events, there is no dispute that the second through sixth events, which Donley says led to her being demoted, took place at the earliest in summer 2018—more than eight months after Hunnicutt became Donley's supervisor on October 1, 2017. What's more, Donley's demotion is even more removed in time, occurring on April 12, 2019, and more than a year and a half after Hunnicutt became Donley's supervisor. Even under Donley's theory that October 1, 2017 is the key date to begin the temporal proximity time clock, these extended gaps in time are too long to support an inference of retaliation. *Oliver v. Amazon.com Services LLC*, 2024 WL 1758287, at *4 (7th Cir. 2024) (no reasonable jury could infer retaliatory motive where protected activity occurred more than five months before plaintiff was fired); *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (two-month gap between protected activity and

termination "cannot show retaliation on its own"); *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015) (six months between protected activity and adverse employment action was insufficient to support inference of causation); *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (finding five weeks insufficient); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 (7th Cir. 1998) (discharge five months after filing charge of discrimination insufficient to suggest a causal link).

Moreover, there is no corroborating evidence of a retaliatory motive that could provide the required casual nexus between Donley's protected activity and these events, culminating in Donley's April 2019 demotion. *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) ("where there is corroborating evidence of retaliatory motive, an interval of a few weeks or even months may provide probative evidence of the required causal nexus.") (internal quotes and citation omitted). First, Donley did not attempt to identify any similarly situated employees who she says were treated more favorably. Doc. 35 at 9, 12. Donley also did not respond to the VA's pretext argument. *Id*. at 9, 13-14. The VA presented evidence of a legitimate, non-retaliatory justification for demoting Donley—namely, performance issues, including a lack of professionalism, leadership skills, and managerial skills. Doc. 36, DSOF ¶¶ 39-43, 46-53. Donley's only arguments appear to be based on temporal proximity, the fact that Hunnicutt's unsatisfactory performance review was the first negative performance evaluation Donley received, and the VA's failure to follow its performance review policy. But the timing of the above events (more than eight months after Hunnicutt becoming her supervisor) does not support an inference that the VA's asserted reason for Donley's demotion is a pretext or a lie.

The other pieces of evidence (Donley's performance history from before the protected activity and Hunnicutt's failure to follow VA policy in issuing a midterm performance evaluation

for Donley in August 2018 and not putting her on a PIP before demoting her) provide an inadequate basis to allow a reasonable factfinder to find pretext. Donley has not shown that her prior positive annual performance reviews by different managers creates an inference of pretext regarding Hunnicutt's independent judgment of her performance. *See Staples v. Pepsi-Cola General Bottlers, Inc.*, 312 F.3d 294, 300 (7th Cir. 2002) ("adequate performance by [plaintiff] at some point in the past does not negate [employer's] estimation that his performance was deficient at a later time."). This leaves only Hunnicutt's failure to precisely follow the VA's performance review policies. It is true that "an employer's failure to follow its own internal procedure can constitute evidence of pretext." *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 727 (7th Cir. 2005). Here, the timeline of the midterm performance review process (August 2018), compared to the VA's standard procedure (March or April 2018), and the lack of a PIP, without more, would not lead a reasonable trier of fact to determine that the VA's reasons for Donley's demotion were pretextual. *Bagwe v. Sedgwick Claims Management Services*, 811 F.3d 866, 882 (7th Cir. 2016) ("there must be evidence of a specific policy that is regularly enforced and followed in similar situations.").

Taking everything into consideration, the Court concludes that Donley has not provided a triable issue that events preceding her demotion and her demotion were retaliatory. Accordingly, summary judgment is granted as to Donley's retaliation claim that stems from events preceding her demotion and her April 2019 demotion.

Donley second retaliation theory is that the VA retaliated against her in violation of the Rehabilitation Act after her April 2019 demotion because it threatened to terminate her if she continued to request a reasonable accommodation related to the GPD Liaison position. Doc. 44 at 14-15. According to Donley, the threats of termination could dissuade a reasonable employee

22

from exercising her rights under the Rehabilitation Act, which acts as the necessary adverse action underlying her retaliation claim. *Beckel v. Wal-Mart Assocs. Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) (suggesting that an employer's threat to fire an employee if she sued for sexual harassment was "a form of anticipatory retaliation, actionable as retaliation under Title VII"); *Fuller v. McDonough*, 2022 WL 2291224, at *14 (N.D. Ill. June 24, 2022) ("Making a person choose between exercising protected rights and being fired may be a prohibited threat: a form of anticipatory retaliation.").

The VA is not entitled to summary judgment on this theory because there is a genuine issue of material fact. After her April 2019 demotion to the GPD Liaison position, Donley requested a reasonable accommodation. In response, Donley's supervisor (Freeman-Hodges) told her that she could be fired for filing a formal request for an accommodation and the Local Reasonable Accommodation Coordinator (Glover) also indicated that Donley could be fired for requesting an accommodation. Doc. 46, DRPSOF ¶¶ 36-40. A reasonable jury could conclude that these threats constituted anticipatory retaliation. Moreover, the VA did not respond to Donley's argument on this issue in its reply brief, which further underscores that this issue is best suited for disposition at trial. Summary judgment on Donley's anticipatory retaliation claim is therefore denied.

## <u>CONCLUSION</u>

Because there remain questions of material fact as to Donley's failure to accommodate claim based on her 2018 accommodation request, her failure to accommodate claim based on her 2019 accommodation request, her interference claim, and her anticipatory retaliation claim that preclude summary judgment, Defendant's motion for summary judgment [34] is denied in part. Summary judgment [34] is granted in part in Defendant's favor with respect to Plaintiff's claims for failure to accommodate based on her 2017 accommodation request and her retaliation claim based on events preceding her demotion and her April 2019 demotion. Donley's claims for age

discrimination, sex discrimination, violation of the Family and Medical Leave Act, and hostile work environment based on disability are dismissed with prejudice as withdrawn. Defendant's motion to strike [49] and Plaintiff's motion to strike [50] are denied.

An in-person status hearing is set for June 11, 2024 at 10:00 a.m. in Courtroom 1858. The parties should be prepared to set a trial date and should confer prior the status hearing about whether a settlement conference would be productive.

**SO ORDERED.**

Dated:  May 13, 2024

_____
Sunil R. Harjani
United States Magistrate Judge